**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: TOSHIBA AMERICA HD DVD MARKETING AND SALES PRACTICES LITIGATION | Civ. No.  08-939 (DRD)<br><br>MDL No. 1956<br><br>**O P I N I O N** |

*Appearances by:*

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
by: James E. Cecchi, Esq. & Lindsey H. Taylor, Esq.
5 Becker Farm Road
Roseland, NJ 07068

MILBERG LLP
by: Sanford P. Dumain, Esq., Peter Safirstein, Esq., & Jennifer S. Czeisler, Esq.
1 Pennsylvania Plaza
New York, NY 10119

  *Interim Liaison Counsel for Plaintiffs*

GREENBERG TRAURIG, LLP
by: Philip R. Sellinger, Esq.
200 Park Avenue
Florham Park, NJ 07932

  *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

  This matter comes before the Court on a motion to dismiss by defendants Toshiba

America Consumer Products, L.L.C. and Toshiba Corporation (collectively, "Toshiba").

Plaintiffs, purchasers of at least one Toshiba High Definition DVD Player (the "HD DVD

Player"), brought claims against Toshiba for violation of the New Jersey Consumer Fraud Act,

N.J. Stat. Ann. § 56:8-1 et seq. ("NJCFA") (or, in the alternative, each plaintiff's home state's consumer fraud statute); unjust enrichment; violation of the Magnuson-Moss Act, 15 U.S.C. §2301 et seq.; breach of express warranty; and breach of implied warranty.  Plaintiffs have styled the complaint as a putative class action, but have not yet moved to move to certify the class.  For the reasons set forth below Toshiba's motion to dismiss will be granted and the Plaintiffs' claims will be dismissed without prejudice.

## I.  BACKGROUND

This multi-district litigation ("MDL") is comprised of six different actions which were originally filed in five different states.  The plaintiffs, Mark Risi, Mitchell Kahl, Jack West, Bradley Kreisler, Patrick Yao, Paul Augustine, and Oscar Salazar ("Plaintiffs"), filed cases against Toshiba in five U.S. District Courts: the District of New Jersey, the Western District of Michigan, the Southern District of Illinois, the Central District of California, and the District of Idaho.  The plaintiffs who filed their original complaints in the District of New Jersey moved on April 23, 2008 for the cases to be consolidated into a multi-district litigation and transferred to this forum pursuant to 28 U.S.C. § 1407.  The United States Judicial Panel on Multidistrict Litigation granted the motion on August 18, 2008, and transferred the actions for coordinated or consolidated pretrial proceedings.

On November 19, 2008, after the various actions that make up this MDL were consolidated and transferred, the court issued a Case Management Order in which it outlined pre-trial responsibilities of the parties, including that the Plaintiffs should file a Consolidated Complaint, which would supersede the complaints filed in the individual actions.  Plaintiffs thereafter filed a Consolidated Class Action Complaint on December 17, 2008 ("CCAC").

**A.     The Allegations of the Complaint**

The following are the allegations of the complaint, which are, for the purpose of this motion only, accepted as true and construed in the light most favorable to the Plaintiffs.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Plaintiffs generally allege that in connection with the marketing of its HD DVD Players, Toshiba "misrepresented its commitment to and support of the HD DVD Format and failed to disclose its plans to discontinue the manufacture and marketing of these devices, leading to their obsolescence only 21 months after their initial sales." (CCAC 1-2.)  For approximately two years, Toshiba marketed its HD DVD Players "as combining the best of high-definition television with the best of DVD—a video format 'for today, tomorrow and beyond.'"  (Id. ¶ 1.)  "On the strength of this marketing, Toshiba sold approximately one million [HD DVD] Players at prices substantially greater than for standard DVD players, only to abruptly announce in February 2008 that it was abandoning the HD DVD format."  (Id.)  Plaintiffs allege that they are now left with "obsolete equipment" only a short time after purchasing their HD DVD Players, "rendering essentially worthless the significant premium paid for high definition capability." (Id.)

### i.     The Parties

Toshiba America Consumer Products, L.L.C. is a New Jersey limited liability company with its headquarters and principal place of business in Wayne, New Jersey.  (Id. ¶ 11.)  Its sole member is Toshiba America, Inc., a Delaware Corporation with its principal place of business in New York.  (Id.)  Toshiba Corporation maintains its headquarters and principal place of business in Tokyo, Japan.  (Id. ¶ 12.)

Plaintiff Mark Risi is a citizen of Florida who purchased two HD DVD Players; he filed his original complaint in the District of New Jersey.  (Id. ¶ 4.)  Plaintiff Mitchell Kahl is a citizen

of New Jersey who purchased an HD DVD Player in November 2007; he filed his original

complaint in the District of New Jersey.  (Id. ¶ 5.)  Plaintiff Jack West is a citizen of Michigan

who purchased an HD DVD Player in December 2007; he filed his original complaint in the

Eastern District of Michigan.  (Id. ¶ 6.)  Plaintiff Bradley Kreisler is a citizen of Illinois who

purchased one HD DVD Player; he filed his original complaint in the Southern District of

Illinois.  (Id. ¶ 7.)  Plaintiff Patrick Yao is a citizen of California who purchased one HD DVD

Player; he filed his original complaint in the Central District of California.  (Id. ¶ 8.)  Plaintiff

Paul Augustine is a citizen of Idaho who purchased one HD DVD Player; he filed his original

complaint in the District of Idaho.  (Id. ¶ 9.)  Plaintiff Oscar Salazar is a citizen of California who

purchased an HD DVD Player in December 2007; he joined as a plaintiff after the originally-

filed cases were consolidated.  (Id. ¶ 10.)

### ii.    *Toshiba's HD DVD Player and Sony's Blu-ray Disc*

High Definition Digital Versatile Disc ("HD DVD") is an optical disc storage format for

encoding audio-visual entertainment such as movies, and is available for playback on compatible

HD DVD players, including Toshiba's HD DVD Player.  (Id. ¶ 13.)  Toshiba developed the HD

DVD format to be a "next generation" format to succeed the standard DVD.  (Id.)  The HD DVD

Player allows consumers to view movies in higher definition and fidelity than allowed by

previous technologies.  (Id.)

Toshiba introduced the HD DVD Player for sale to consumers in the United States in

April 2006.  (Id. ¶ 14.)  At that time the list prices ranged from $499 to $799.  (Id.)  Plaintiffs

allege that these prices were 200% to 500% of the cost of standard DVD players without high

definition capabilities.  (Id.)

The HD DVD Player faced competition from Blu-ray Disc, an optical disc format largely developed and supported by the Sony Corporation ("Sony").  (Id. ¶ 18.)  Blu-ray Disc was also marketed as a "next generation" format for the encoding and playback of audio-visual entertainment.  (Id.)  Several major movie studios, which regularly release movies in the DVD format, chose to release movies in Blu-ray format rather than HD DVD.  (Id. ¶ 25.)  Disney (including Touchstone and Miramax), Sony Pictures (including MGM/Columbia Tristar) and 20th Century Fox all supported Blu-ray technology rather than HD DVD.  (Id.)  Plaintiffs allege that Toshiba "consistently failed to disclose to its customers" this information regarding the support of certain movie studios for Blu-ray rather than HD DVD technology.  (Id.)  In what the Plaintiffs characterize as "a desperate attempt by Toshiba to increase its market share and garner HD DVD movie studio support," on August 21, 2007, The New York Times reported that Paramount and Dream Works Animation would receive approximately $150 million in financial incentives for their commitment to HD DVD.  (Id.)

The competition between Blu-ray and HD DVD was well reported in the media and was likened to the competition 30 years ago between the VHS and Betamax formats for home video recording.  (Certification of David E. Sellinger, February 17, 2009 ("Sellinger Cert.") Ex. C at 2 and Ex. E at 1.)[1]  As Business Week reported in its December 6, 2007 edition,

> For two years now, rival camps have been battling over which new DVD format will prevail:  Blu-ray, which is backed by Sony (SNE) and a consortium of 170 other companies, or HD DVD, which is being championed by Toshiba (TOSBF), Microsoft (MSFT), and others.  Both technologies promise crisper video that looks better on the new generation of flat-panel, high definition TVs.  And the winner stands to control a lucrative new market worth billions.  Each side has been competing to win the backing

---

[1] The August 21, 2007 and December 31, 2007 articles from The New York Times are not attached to the CCAC but are specifically referenced therein and thus are properly considered by the court in this motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

of the major movie studios.  Only Warner Bros. (TWX), which
currently uses both formats, is still playing hard to get.

(Sellinger Cert. Ex. D at 1.)[2]  That same article reported that there were rumors that "Warner

[was] coming aboard - [Sony] soon," meaning that Warner Brothers was planning to discontinue

production of movies in the HD DVD format and instead use the Blu-ray format.  (Id.; CCAC

¶ 35.)  Business Week also reported that the head of Toshiba's HD DVD business in Japan had

made three trips since the summer to meet with Warner Brothers regarding its HD DVD

business.  (Sellinger Cert. Ex. D at 1; CCAC ¶ 35.)  On December 10, 2007, The New York

Times reported that Warner Brothers had signaled that it would choose one format — HD DVD

or Blu-ray — after the 2007 holiday shopping season and that its choice would be determined by

which format sold more DVDs during that season.  (CCAC ¶ 35.)

Toshiba continued to market its HD DVD Players, with the slogan "For Today,

Tomorrow and Beyond," throughout the 2007 holiday shopping seasons and thereafter.  (Id.

¶ 27.)  During that season, Plaintiffs allege that Toshiba lowered prices on its Players in order to

induce additional sales.  (Id.)

On January 4, 2008, Warner Brothers announced that it would no longer release movies

in the HD DVD format.  (Id. ¶ 26.)  This announcement led to "a chain reaction in the industry,"

which included decisions by Best Buy, Wal-Mart and Circuit City to drop HD DVD from their

stores.  (Id.)  Once Warner Brothers decided in favor of Blu-ray, that system's market share

increased from 49% to 70%.  (Id. ¶ 35.)

Toshiba continued marketing its HD DVD Players in January and the first weeks of

February 2008.  On January 14, 2008, Toshiba issued a press release stating "that it [was]

---

[2] The December 6, 2007 article in Business Week is not attached to the CCAC but is specifically
referenced therein and thus is properly considered in this motion to dismiss.  Burlington Coat
Factory Sec. Litig., 114 F.3d at 1426.

stepping up its successful marketing campaign for HD DVD as it experienced record-breaking

unit sales in the fourth quarter of 2007." (Id. ¶ 28.)  That press release also stated that "HD DVD

is proven to be the format of choice for consumers" and that Toshiba planned to execute an

extended advertising campaign to further enhance consumer awareness of the benefits of HD

DVD and drive sales.  (Id.)  On February 3, 2008, Toshiba ran an ad during the Super Bowl,

"highlighting its HD-A3, HD-A30 and HD-A35 Players," which the Plaintiffs allege "thereby

[characterized] the long-term viability of the Players."  (Id. ¶ 29.)

Plaintiffs allege that "[m]arket insiders" predicted that Blu-ray would win the battle with

the HD DVD format if for no other reason than the fact that Blu-ray was backed by Disney.  (Id.

¶ 35.)  Plaintiffs also allege that "Toshiba was aware of market trends and knew, despite its

misleading marketing campaign, that it was only a matter of time before the company withdrew

from the marketplace abandoning its customer base."  (Id. ¶ 35.)  Plaintiffs claim that, as a

"direct result of Toshiba's abrupt exit from the HD DVD market," their investments in the HD

DVD Players "lost significant value."  (Id. ¶ 31.)

### iii.   Toshiba's Marketing of the HD DVD Player

Plaintiffs allege that the "relative technological differences between the two competing

formats were small and largely immaterial to consumer," and therefore the primary focus for the

marketing of these "next generation" optical disc players was "the long term viability of the

format."  (Id. ¶ 19.)  Plaintiffs allege that "Toshiba represented, and consumers reasonably

expected, that the HD DVD format would indeed combine the best of DVDs and high-definition

television, so that the HD DVD format would replace DVDs as a higher-quality standard for

viewing movies."  (Id. ¶ 15.)  According to Toshiba's advertising and marketing campaign in

July 2006, the HD DVD Players offer "The Look and Sound of Perfect," and combine "the best

of high-definition television with the best of DVD to offer consumers: (a) six times better picture quality than standard DVDs, (b) master-quality sound better than the local Cineplex, and (c) interactive features exclusive to the HD DVD format, such as in-movie pop-up menus and picture-in-picture bonus commentary."  (Id. ¶ 17.)

Plaintiffs allege that "Toshiba further represented that the HD DVD format had the support of the film distribution, rental, and retail industries, such that ample HD DVD movies would be available for use on consumers' [HD DVD] Players."  (Id. ¶ 16.)  On February 17, 2006, Toshiba released a promotional brochure that touted HD DVD as being "officially recognized by the DVD Forum as the next high-capacity DVD disc."  (Id. ¶ 21.)

Plaintiffs allege that Toshiba capitalized on consumers' concerns regarding the long-term viability of this next generation technology "by representing on its now defunct website, www.toshibadvd.com, that HD DVD was a standard for 'Today, Tomorrow and Beyond.'"  (Id. ¶ 20.)  Toshiba represented that it would continue to support the HD DVD format, by, among other things, "continuing the manufacturing and marketing of HD DVD hardware, ensuring the continued viability of the format so as to assure the continued production of the HD DVD compliant software."  (Id.)

### iv.    Toshiba's Decision to Exit the HD DVD Market

On February 19, 2008, Toshiba issued a press release in which it announced that it had "undertaken a thorough review of its overall strategy for HD DVD and [had] decided it will no longer develop, manufacture and market HD DVD players and recorders."  (Sellinger Cert. Ex. A at 1.)[3]  The press release stated that the decision was made "following recent major changes in the market," and that Toshiba would continue "to provide full product support and after-sales

---

[3] Toshiba's February 19, 2008 press release is not attached to the CCAC but it is specifically referenced therein and thus is properly considered by the court in this motion to dismiss. Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

services for all owners of Toshiba HD DVD products." (Id.)  The CCAC does not allege that

Toshiba has not provided such support.  Rather, Plaintiffs allege that Toshiba knew well before

its February 19, 2008 announcement "that its commitment to the HD DVD format was not likely

to continue in the future, yet Toshiba specifically represented to consumers as late as February

18, 2008 . . . that it had not decided to discontinue its support."  (CCAC ¶ 32.)

On March 3, 2008, the Wall Street Journal published an article in which Toshiba

Corporation's Chief Executive and President, Atsutoshi Nishida, stated that he first started

thinking about withdrawing from the HD DVD business "[w]hen Warner [Brothers] announced

its support for Blu-ray on the 4th of January [2008]."  (Sellinger Cert. Ex. B at 1.)[4]  He further

explained, "We took a little time before reaching a final decision, so we could give people a

chance to voice their opinions and we could consider all of the ramifications and consequences

of pulling out, such as how it would affect consumers and us."  (Id.)  Mr. Nishida also stated, "I

didn't think we stood a chance after Warner left us because it meant HD DVD would have just

20% to 30% of software market share. . . . We were doing this to win, and if we weren't going to

win then we had to pull out, especially since consumers were already asking for a single

standard."  (Id. at 1-2.)

Plaintiffs also allege that, after Toshiba discontinued the sale of the HD DVD Players,

Mr. Nishida downplayed the benefits of its much touted HD DVD Players by noting, in the

March 3, 2008 article in the Wall Street Journal, that Toshiba's standard DVD players include an

"upconverting feature" that Toshiba planned to improve "so that consumers won't be able to tell

the difference from HD DVD images."  (Id. at 2; CCAC ¶ 36.)  Plaintiffs allege that this

statement was at odds with the prior representations of Toshiba, made to induce consumers to

---

[4] The March 3, 2008 article from the Wall Street Journal is not attached to the CCAC but is
specifically referenced therein and thus is properly considered in this motion to dismiss.
Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.

pay a premium for the HD DVD Players, that the HD DVD Players offered a picture quality six times better than that of a standard DVD.  (CCAC ¶ 36.)  As recently as December 17, 2008, Toshiba ran an advertisement in <u>The New York Times</u> for its XDE technology, which up-converts DVD to match the resolution of HDTV; this technology is available for $99.99.  (<u>Id.</u>)

### v.      The Plaintiffs' Purchases of the HD DVD Players

All Plaintiffs purchased one or more new HD DVD Players, for personal use, before Toshiba announced that it would exit the HD DVD market.  (<u>Id.</u> ¶ 38.)  Plaintiffs do not allege how much they paid for their HD DVD Players or where they bought them; all but three of the Plaintiffs do not allege when they bought their players other than that they bought them before February 19, 2008.  (<u>Id.</u> ¶¶ 4-10.)  Plaintiffs learned for the first time in February 2008 that Toshiba would exit the HD DVD market and that new movie titles would not be released in the HD DVD format.  (<u>Id.</u> ¶ 41.)  Plaintiffs allege in the CCAC that Toshiba's marketing of the HD DVD format was "a primary impetus" for their purchases of the HD DVD Players (<u>Id.</u> ¶ 39), but none of the Plaintiffs allege that he saw or heard any advertisement for Toshiba's HD DVD Players at any time.  Plaintiffs allege that if Toshiba had disclosed the fact that several major movie studios would not release their movies in the HD DVD format and that "Toshiba was not committed to the HD DVD format," then the Plaintiffs would not have purchased the HD DVD Players.  (<u>Id.</u> ¶ 40.)  Plaintiffs claim to have suffered ascertainable loss and damage because they "paid a significant premium for the HD DVD capability, which is of little or no value now that the driving force behind the HD DVD format withdrew its support, and HD DVD software for the Players [is] unavailable."  (<u>Id.</u> ¶ 43.)

B.        **Claims Against Toshiba**

The CCAC contains six counts against Toshiba.  The Plaintiffs claim (1) violation of the

NJCFA; (2) unfair and deceptive acts and practices under state laws; (3) unjust enrichment; (4)

violation of the Magnuson-Moss Act; (5) breach of express warranties; and (6) breach of implied

warranties.

C.        **Relief Sought**

The Plaintiffs seek to maintain this action as a class action, though they have not yet

moved for certification of the class.  In the CCAC, the Plaintiffs request an award of actual and

consequential damages; reimbursement, restitution and disgorgement from Toshiba of the

benefits conferred by the Plaintiffs (and class); pre- and post-judgment interest; and attorneys'

fees and costs.

## II.  DISCUSSION

Toshiba argues that the Plaintiffs fail to support the elements of each of their claims as

pled in the CCAC.  Toshiba claims that it was under no duty to disclose to consumers its

strategies and considerations regarding its participation in a competitive market.  Additionally,

given the high level of publicity surrounding the format war between Blu-ray and HD DVD,

Toshiba argues that the reasonable consumer would not have expected Toshiba to remain in the

HD DVD market if it lost the format war.  It argues that any representations about HD DVD

players, such as "For Today, Tomorrow, and Beyond," are mere puffery.  For these reasons,

Toshiba moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all of the claims

against it.

A.      **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for

failure to state a claim upon which relief can be granted.  When considering a motion under Rule

12(b)(6), the court must accept the factual allegations in the complaint as true and draw all

reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

906 (3d Cir. 1997).  The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial

on the merits, but whether they should be afforded an opportunity to offer evidence in support of

their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule

12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim, which would entitle him to relief."  In contrast, the Court in Bell Atlantic

held that "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  550 U.S. at 545.  The assertions in the complaint must be enough to "state a claim to

relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to

draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S.

Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in

order to survive a motion to dismiss, the factual allegations in a complaint must "raise a

reasonable expectation that discovery will reveal evidence of the necessary element," thereby

justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B.      Choice of Law**

Plaintiffs argue that "which law or laws apply cannot be resolved at this stage" because a choice of law analysis must consider "not only the place of the transaction, but where the representations were made, where they were received, the domicile or place of business of the parties, and many other possible factors — some of which may not even be known at the pleadings stage." (Plts.' Opp'n Br. 12-13.) But, as Toshiba points out, the allegedly unknown information required for a choice of law analysis are almost all facts known to the Plaintiffs. Where the Plaintiffs purchased their HD DVD Players, if and where they received the alleged misrepresentations of Toshiba, and where the Plaintiffs are domiciled are all facts known to the Plaintiffs, yet the CCAC does not allege where the Plaintiffs purchased their HD DVD Players or if and where they received misrepresentations from Toshiba regarding the HD DVD Players.

It is unnecessary, however, to conduct a choice of law analysis at this stage because, as explained below, for each of the Plaintiffs' claims, there is either no conflict of law or the Plaintiffs' claims fail under any of the possibly applicable laws.

C.      **Count 1:  Violation of the NJCFA**

The NJCFA makes it unlawful for "any person"[5] to use an "unconscionable commercial

practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing

concealment, suppression, or omission of any material fact . . . in connection with the sale or

advertisement of any merchandise or real estate."  N.J. Stat. Ann. § 56:8-2.  The NJCFA

"provides a remedy for any consumer who has suffered an 'ascertainable loss of moneys or

property, real or personal, as a result of [a CFA violation],' including treble damages, costs, and

attorneys fees."  Lee v. First Union Nat'l Bank, 199 N.J. 251, 257 (2009) (quoting N.J. Stat.

Ann. § 56:8-19).  Because the NJCFA is remedial legislation, its provisions "should be construed

liberally in favor of consumers."  Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994).  "To

constitute consumer fraud . . . the business practice in question must be 'misleading' and stand

outside the norm of reasonable business practice in that it will victimize the average

consumer . . . ."  Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 115 (App. Div.

2005) (citing New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 13 (App.

Div. 2003)).  To state a claim under the NJCFA, a plaintiff must allege "1) unlawful conduct by

defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful

conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)

(citation omitted).

Plaintiffs allege the following "misrepresentations, omissions and unconscionable

commercial practices" by Toshiba violated the NJCFA:

            a.      Representing that HD DVD offered the best of high-
                    definition television and DVD;

---

[5] Under the NJCFA, the term "person" includes any "partnership, corporation, company, trust,
business entity or association . . ."  N.J. Stat. Ann. § 56:8-1.  Under the NJCFA, Toshiba
qualifies as a "person."

> b.     Representing that HD DVD was a format for today, tomorrow and beyond, and that Toshiba was committed to supporting the HD DVD format into the future;
>
> c.     Failing to adequately and clearly inform consumers that major motion pictures would not be released on HD DVD; and
>
> d.     Failing to adequately and clearly inform consumers that Toshiba planned to withdraw its support for the HD DVD format by exiting the market.

(CCAC ¶ 56.)  Plaintiffs allege that these acts constitute "unconscionable, unlawful, fraudulent and deceptive commercial practices," and that "Toshiba knew that it was not committed to supporting the format it developed or manufacturing compatible hardware, and it determined to benefit economically by continuing to market these soon to be obsolete products to consumers." (Id. ¶ 57.)  Plaintiffs further allege that "[a]s a result of this conduct, Plaintiffs . . . paid a premium for these now obsolete devices, which are now of greatly diminished value, and have suffered an ascertainable loss."  (Id.)

The heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims under the NJCFA as well as claims of common law fraud.  Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 500 (D.N.J. 2009) (citing Slim CD, Inc. v. Heartland Payment Sys., No. 06-2256, 2007 WL 2459349, at *11 (D.N.J. Aug. 22, 2007) and F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994)).  "It is true that 'in the case of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.'"  Bathgate, 27 F.3d at 876 (citing Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989)).  But "even under a non-restrictive application of the rule [9(b)], pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based."  Id. (citing Craftmatic, 890 F.2d at 645).

In <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007), the Court of Appeals elucidated what must be alleged to satisfy the heightened pleading standard:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." [<u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004)]. To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. <u>See id.</u> at 224.

<u>Frederico</u>, 507 F.3d at 200. "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." <u>Maniscalco</u>, 627 F. Supp. 2d at 500; <u>see</u> Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of mind of a person may be alleged generally.").

### i.   *Unlawful Conduct*

In order to state a claim under the NJCFA, the Plaintiffs must first allege unlawful conduct. The NJCFA "sets forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." <u>Bosland v. Warnock Dodge, Inc.</u>, 396 N.J. Super. 267, 272 (App. Div. 2007) (citing <u>Cox</u>, 138 N.J. at 17). Plaintiffs allege both affirmative acts and knowing omissions on the part of Toshiba. "The prohibited affirmative acts do not require proof of intent to mislead." <u>Vagias v. Woodmont Properties, L.L.C.</u>, 384 N.J. Super. 129, 133 (App. Div. 2006). "On the other hand, the [NJCFA] specifically provides that acts of omission must be 'knowing' and committed with 'intent' to induce reliance." <u>Id.</u> at 134 (citing N.J. Stat. Ann. § 56:8-2).

a.      **Affirmative Acts**

Plaintiffs allege the following affirmative acts: (1) representing that HD DVD offered the

best of high-definition television and DVD; and (2) representing that HD DVD was a format for

today, tomorrow and beyond, and that Toshiba was committed to supporting the HD DVD

format into the future.  With respect to the first statement, the CCAC does not allege that the HD

DVD Players do not meet the performance expectations.  There is no allegation that HD DVD

does not actually offer the "best of high-definition television and DVD."  In any case, however,

the statement cannot be considered anything but puffery.  The NJCFA distinguishes between

actionable misrepresentations of fact and "puffery."  <u>Rodio v. Smith</u>, 123 N.J. 345, 352 (1991)

(the slogan "You're in good hands with Allstate" was "nothing more than puffery" and was thus

not "a deception, false promise, misrepresentation, or any other unlawful practice within the

ambit of the Consumer Fraud Act").

For example, in <u>Schering-Plough Corp.</u>, where the central contention of the plaintiffs was

that statements in the defendant's advertisements, such as "you . . . can lead a normal nearly

symptom-free life again," were "intended to be understood by consumers as a guarantee of total

and universal effectiveness of the product," the court held that this and similar statements were

"not statements of fact, but [were] merely expressions in the nature of puffery and thus are not

actionable."  367 N.J. Super. at 13-14; <u>see</u> <u>also</u> <u>Daibo v. Kirsch</u>, 316 N.J. Super. 580, 589 (App.

Div. 1998) ("Representations by a seller as to the value of his property are not usually a basis for

a claim of fraud . . . . Value is a matter of opinion.") (quoting <u>Garden Realty Corp. v. Hadley</u>,

110 N.J. Eq. 475-76 (E. & A. 1932) (internal quotations omitted)); <u>Bouno Sales, Inc. v. Chrysler</u>

<u>Motors Corp.</u>, 363 F.2d 43, 56 (3d Cir. 1966) ("use of the term 'best qualified' was merely

puffing").  Whether something is the "best" is highly subjective, is almost always a matter of

opinion, and is the type of statement regularly made by companies in promoting their products. Indeed, whether Blu-ray or HD DVD was the better technology was the subject of much debate, as evidenced by the August 21, 2007 article in The New York Times referenced in the CCAC. (Sellinger Cert. Ex. C at 2 ("Which high-definition technology is better has been the subject of intense debate in Hollywood for years.").)

      The second affirmative act alleged by the Plaintiffs is that Toshiba "representing that HD DVD was a format for today, tomorrow and beyond, and that Toshiba was committed to supporting the HD DVD format into the future."  (CCAC ¶ 14.)  Again the statement that HD DVD was a format "For Today, Tomorrow and Beyond" is puffery and is not an actionable statement.  It defies logic that a consumer would believe, based on the tag line "For Today, Tomorrow and Beyond" that Toshiba was committed to producing HD DVD Players indefinitely, particularly given the well-publicized format war with Blu-ray, wherein both Sony and Toshiba were trying to capture the next generation DVD market.  Other than the phrase "For Today, Tomorrow and Beyond," the only specific allegation Plaintiffs make regarding Toshiba's affirmative representations is that Toshiba touted HD DVD as being "officially recognized by the DVD Forum as the next high-capacity DVD disc."  (CCAC ¶ 21.)  There is no allegation, however, that this statement — regarding what seems to be an endorsement by a trade group — was false.  The remainder of the allegations in the CCAC regarding Toshiba's marketing of the HD DVD Players are general allegations that do not rise to the level of specificity of pleading required by Iqbal or Fed. R. Civ. P. 9.  (See CCAC ¶¶ 15, 16, 20.)

      Though not specifically pled in the CCAC, in their Opposition Brief the Plaintiffs also argue that Toshiba made these affirmative misrepresentations in documents referenced in the

CCAC:  that HD DVD Players "can be updated[6] to support future applications and services" and

"have the potential to download future studio-provided additional content such as trailers,

soundtracks or related merchandise."  (Plts.' Opp'n Br. at 10, citing Sellinger Cert. Ex. G at 5.)

The Plaintiffs do not make sufficient allegations of fact, however, to state a claim that these

statements qualify as affirmative misrepresentations under the NJCFA.  First, the Plaintiffs do

not allege that either of these statements is not true.  Second, while Plaintiffs correctly note that

"[e]ven if an advertisement is literally true, it may be actionable if 'the overall impression [it]

create[s] . . . is misleading and deceptive to an ordinary reader,'" Union Ink Co. v. AT&T Corp.,

352 N.J. Super. 617, 644 (App. Div. 2002) (citing Miller v. Am. Family Publishers, 284 N.J.

Super. 67, 87 (Ch. Div. 1995)), they fail to allege sufficient facts to claim that an "ordinary"

consumer — who they admit would have been aware of the format war between HD DVD and

Blu-ray — would have expected the loser to remain in the market indefinitely regardless of the

implications of doing so.  On the contrary, the numerous articles referenced in the CCAC

provide support for the notion that the struggle to capture the next generation DVD market was

seen as a winner-take-all battle.

Plaintiffs also argue that Toshiba's statements were not "puffery" because puffery is

"advertising that is not deceptive for no one would rely on its exaggerated claims."  (Plts.' Opp'n

Br. 9, citing United States Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir.

1990)).  Even under this definition — made in a case discussing false or misleading advertising

under the Lanham Act — the statements that HD DVD offers the best of high definition

television and DVD and that HD DVD are "For Today, Tomorrow and Beyond" are still too

general, vague or exaggerated to be anything more than puffery.  See also Haskell v. Time, Inc.,

---

[6] The Plaintiffs' brief uses the word "upgraded" here, but the document itself says "updated."
(Plts.' Opp'n Br. at 10 and Sellinger Cert. Ex. G at 5.)

857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."); Avery v. State Farm Mat. Auto. Ins. Co., 835 N.E. 2d 801, 847 (Ill. 2005) ("Describing a product as 'quality' or as having 'high performance criteria' are the types of subjective characterizations that Illinois courts have repeatedly held to be mere puffing.").

### b.    Omissions

Plaintiffs also allege the following omissions by Toshiba:  (1) failing to adequately and clearly inform consumers that major motion pictures would not be released on HD DVD; and (2) failing to adequately and clearly inform consumers that Toshiba planned to withdraw its support for the HD DVD format by exiting the market.  These omissions alleged by the Plaintiffs appear to have been widely publicized information, based on the allegations and articles referenced in the CCAC.  The CCAC alleges that "[t]he popular media reported as early as December 6, 2007 that Warner Brothers was likely to favor Blu ray and discontinue production in Toshiba's HD DVD format."  (CCAC ¶ 35.)  The August 21, 2007 article from The New York Times, also referenced in the complaint, explained that certain movie studios were committed to releasing movies only in Blu-ray format, while others had committed to the HD DVD format: "Hollywood's squabble over which of two technologies will replace standard DVDs reignited Monday with two studios throwing their weight behind one format and several rivals ramping up support for the other."  (Sellinger Cert. Ex. C (emphasis added).)  The article explained that the Walt Disney Company and 20th Century Fox were committed to Blu-ray; the president of the Walt Disney Company's home entertainment unit was quoted in the August 21 article as saying, "There is no longer any doubt that Blu-ray is the clear successor to standard DVDs."  (Id.)  The

article also reported that Paramount and DreamWorks Animation were backing HD DVD,

though Paramount's agreement to use only HD DVD was limited to 18 months.  (Id.)

Further, the December 6, 2007 article from Business Week referenced in the CCAC

described the battle between HD DVD and Blu-ray in this manner:

> For two years now, rival camps have been battling over which new
> DVD format will prevail:  Blu-ray, which is backed by Sony
> (SNE) and a consortium of 170 other companies, or HD DVD,
> which is being championed by Toshiba (TOSBF), Microsoft
> (MSFT), and others . . . . And the winner stands to control a
> lucrative new market worth billions.   Each side has been
> competing to win the backing of the major movie studios.  Only
> Warner Bros. (TWX), which currently uses both formats, is still
> playing hard to get.

(Sellinger Cert. Ex. D at 1.)  Not only does the article in Business Week state that the battle

between Blu-ray and HD DVD had been going on for two years, but it also stated that the battle

was over "which new DVD format will prevail" — i.e., which format would eventually dominate

the market.  That article also explained that, "[w]hile either side could prevail," Sony had

emerged as the front runner because it had lined up more studios to support Blu-ray than had

lined up to support HD DVD.  (Id.)  Additionally, the article reported that Warner Brothers had

"long pushed for a single format," and that if Warner Brothers choose to release movies in Blu-

ray, it would give Sony a 70% market share, which "could prompt the other studios to abandon

HD DVD."  (Id.)  Similarly, the December 31, 2007 article from The New York Times

referenced in the CCAC characterized the competition between HD DVD and Blu-ray as having

a winner and loser:  "The winner of the format wars could be determined by which company has

the most content, in the same way the VHD-Betamax VCR war was decided."  (Sellinger Cert.

Ex. E at 1.)

The Plaintiffs argue that it is not relevant that information about the format war was public knowledge because "[u]nder the CFA, the 'omission, of any material fact with intent that others rely upon such concealment . . . ' is unlawful."  (Plts.' Opp'n Br. 7, citing <u>Nafar v. Hollywood Tanning Sys.</u>, No. 06-CV-3826, 2007 WL 1101440, at *8 (D.N.J. Apr. 10, 2007) (unpublished).)  As an initial matter, the notion that Toshiba could "conceal" something that was so well covered in the media defies logic.  In order to intend that others rely on the concealment of a fact, the fact must, of course, actually be <u>concealed</u>.

In support of their argument, Plaintiffs cite to the unpublished decision in <u>Nafar v. Hollywood Tanning Systems</u>, where the court rejected the defendant's argument that there was no duty under the NJCFA to disclose the risks associated with excessive exposure to U.V. rays because such risks are "common knowledge."  2007 WL 1101440, at *7-*8.  The court in <u>Nafar</u> reasoned that it could not, at the pleadings stage and before discovery, "determine as a matter of law 'what the average consumer knows or should know'" and noted that, in the context of that case, "the average consumer's knowledge of the harmful effects of indoor tanning is a disputed issue."  <u>Id.</u>  The situation in <u>Nafar</u>, however, is distinct from the facts alleged in this case.  In <u>Nafar</u>, the defendant argued that the court should recognize that the dangers of excessive UV-based tanning were common knowledge, and thus there was no duty to disclose that information under the NJCFA.  <u>Id.</u> at *7.  The idea that the dangers of UV-based tanning were common knowledge, however, was contrary to the pleadings.  <u>Id.</u>  at *7-*8.  In contrast, the CCAC in this matter and the articles referenced therein are replete with allegations and documentation, described above, that the format war between Sony and Toshiba was well publicized and was characterized as a battle which would result in only the "winning" format continuing in the marketplace.

The Plaintiffs argue that "there is no exemption for facts which are 'public knowledge,' or for 'possible future developments in marketing.'" (Plts.' Opp'n Br. 8.) They argue that "[t]he Nafar court rejected Toshiba's argument that public disclosure of information negates" the duty to disclose material facts.  (Id.)  The Nafar court explained,

> [Defendant] argues that it is only required to disclose information if it has a "duty to disclose," and the recognition of a legal duty is a question of law.  In doing so, [defendant] conflates a "duty to disclose" with the issue of materiality.
>
> For Plaintiff to succeed on her CFA claim, she has the burden of demonstrating that the ill effects of tanning are "material facts," facts that would be important to a consumer's decision whether or not to purchase Defendant's product.  It is the materiality of those facts, the ill effects of tanning, which is at issue.  The ill effects of tanning would not be material if the average consumer knows about these ill effects, and this information would be material if the average consumer does not know about the ill effects.

Id. at *8.  In Nafar, both parties disputed "the very existence of any ill effects related to tanning," id., whereas here there is no dispute that the format war was well publicized.  Indeed, the Plaintiffs do not allege that they were unaware of the format war or that eventually only the winner of the format war would exist in the market.  Thus, under the analysis in Nafar upon which the Plaintiffs rely, the Plaintiffs have failed to plead that the format war and the expected result of that war (i.e., a single next generation format) were material facts because they were so well known.

The Plaintiffs also cite to this court's opinion in Atlass v. Mercedes-Benz USA, LLC, Civ. No. 07-2720, 2007 WL 2892803 (D.N.J. Sept. 25, 2007), denying a motion to dismiss claims under the NJCFA.  The facts of Atlass, however, are distinct from those here.  In Atlass, the plaintiffs had purchased an analog Tele-Aid system which would cease to function on a certain date due to a decision of the Federal Communications Commission.  The defendant in

Atlass knew that the analog Tele-Aid system would cease to function on a specific date, yet did not inform the purchasers.  In contrast, the Plaintiffs' HD DVD Players still function; there is no allegation that the HD DVD Players are no longer capable of playing HD DVDs.  Additionally, there is no allegation that Toshiba knew for certain that it would cease to manufacture HD DVD Players on a certain date.  Rather, the Plaintiffs argue that Toshiba should have disclosed to its consumers that, if it did not beat Blu-ray in the format war, it would exit the market.  Plaintiffs provide no support however, that such an onerous requirement on companies — to disclose their internal competitive business considerations to their consumers, and thus also to their competitors — could possibly be required by the NJCFA.

The Plaintiffs have failed to allege the unlawful conduct required by the NJCFA, so they have failed to state a claim under the NJCFA.  Count One of the CCAC is therefore dismissed.

### ii.    *Ascertainable Loss and Causation*

While the court finds that the Plaintiffs' claim under the NJCFA fails because it does not sufficiently allege the "unlawful conduct" required by the statute, the CCAC also does not meet the pleading requirements of Fed. R. Civ. P. 9(b) or Iqbal with respect to the ascertainable loss and causation required to state a claim under the NJCFA.  The CCAC fails to allege any facts upon which the court could find that the Plaintiffs have suffered an ascertainable loss and that there was a causal relationship between the unlawful conduct and the loss; rather, they present "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Regarding the ascertainable loss, the Plaintiffs fail to allege where (and for all Plaintiffs but three — when) they purchased their HD DVD Players; how much they paid for the HD DVD Players; and how much regular DVD players cost at the time (i.e., how much of a "premium" they claim to have paid for their HD DVD Players).

Regarding the causation, Plaintiffs fail to allege when Toshiba made its alleged misrepresentations and when, if ever, the Plaintiffs were exposed to those misrepresentations. With respect to the alleged omissions by Toshiba, the Plaintiffs similarly do not plead facts — only conclusions — when they allege that they would not have purchased the HD DVD Players or paid a premium for the HD DVD Player if Toshiba had disclosed "that major movie studios would not be releasing their movies in the HD DVD format and that Toshiba was not committed to the HD DVD format."  (CCAC ¶ 40.)

**D.     Count 2:  Unfair and Deceptive Acts and Practices Under State Law**

Plaintiffs failed to plead the elements for liability under any of the state statutes cited under Count Two; rather, they simply state that Defendants have violated the laws of each of 44 states and the District of Columbia.  (CCAC ¶¶ 60 - 104.)  Toshiba argues, and Plaintiffs do not contest, that this pleading fails to meet even the requirements of Fed. R. Civ. P. 8.  The court agrees that this sort of "catch-all" listing of statutes does not meet the most basic pleading requirements and therefore dismisses Count Two.  See Kalow & Springnut, LLP v. Commence Corp., Civ. No. 07-3442, 2009 WL 44748, at *4-*5 (D.N.J. Jan. 6, 2009).

**E.     Count 3:  Unjust Enrichment/Restitution**

"'The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'"  Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting Assocs. Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986)).  "To establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).  The standard

to prove a claim for unjust enrichment is essentially the same in all of the states relevant to this action at this time and there is, therefore, no actual conflict of law regarding unjust enrichment.[7] See In re Terazosin Hydrochloride, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical. Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States.") (internal citation and quotation marks omitted).[8, 9]

---

[7] The standards to prove a claim of unjust enrichment in the other relevant states are:

California:  [T]he elements for a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another."  Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000) (citing First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657, 1662-63 (Cal. Ct. App. 1992)).

Florida:  "The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006) (citing Swindell v. Crowson, 712 So. 2d 1162, 1163 (Fla. Dist. Ct. App. 1998)).

Idaho:  "A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." Vanderford Co., Inc. v. Knudson, 144 Idaho 547, 558 (2007) (citing Aberdeen-Springfield Canal Co. v. Peiper, 133 Idaho 82, 88 (1999)).

Illinois:  "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill.2d 145, 160 (Ill. 1989) (citing Drury v. County of McLean, 89 Ill.2d 417, 425-26 (Ill. 1982)).

Michigan:  "Unjust enrichment requires a plaintiff to prove (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."  Hudson v. Mathers, --- N.W.2d ----, 283 Mich. App. 91, 2009 WL 735857, *3 (Mich. Ct. App. 2009) (citing Belle Isle Grill Corp. v. Detroit, 256 Mich. App. 463, 478 (Mich. Ct. App. 2003)).

[8] Toshiba argues that courts in California "have found unjust enrichment to be a remedy, not a claim."  (Def.'s Mot. to Dismiss 49, citing Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment. . . . Unjust enrichment is a general principle, underlying various legal doctrines and

Plaintiffs allege that "it would be unjust enrichment for Defendants to retain the full benefits of the sale of the [HD DVD] Players where the [HD DVD] Players are not capable of performing much of their primary functions as alleged herein."  (CCAC ¶ 107.)  Plaintiffs further allege that "[a]s a direct and proximate result of Defendants' deliberate misconduct, Plaintiffs suffered loss and damages while Defendants profited and benefited from the sale of its Players."  (Id. ¶ 108.)  Plaintiffs also claim that "as a result of Defendants' conscious and unconscionable wrongdoing, consumers were not receiving products of the value that had been represented to them or that reasonable consumers expected."  (Id. ¶ 109.)

Plaintiffs have failed to state a claim for unjust enrichment.  Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received.  Plaintiffs' allegation that the HD DVD Players "are not capable of performing much of their primary functions as alleged herein" is without support, as Plaintiffs do not allege that their HD DVD Players do not play HD DVDs.  Plaintiffs' allegation that as a result of Toshiba's "conscious and unconscionable wrongdoing" they did not receive "products of the value that had been represented to them or that reasonable consumers expected" is also without support.  Toshiba did not have control over whether movie studios chose to release movies in HD DVD format; indeed, as Plaintiffs themselves allege, Toshiba invested time and money to try to convince

remedies, rather than a remedy itself." (internal quotations and citations omitted).)  But Plaintiffs correctly argue that courts applying California law have repeatedly permitted claims for unjust enrichment to proceed.  (Plts.' Opp'n Br. 30, citing Hirsch v. Bank of Am., 107 Cal. App. 4th 708, 721-22 (Cal. Ct. App. 2003)).  For the purposes of this motion, the court will assume that California law permits a claim for unjust enrichment.

[9] Toshiba argues that the laws of New Jersey and Florida do not recognize unjust enrichment absent a direct relationship.  Because the court finds that Plaintiffs have failed to state a claim for unjust enrichment, even if a direct relationship is not required, the court will not address whether a direct relationship is required for a claim of unjust enrichment under Florida or New Jersey law.

movie studios to commit to the HD DVD format.  (Id. ¶ 25.)  Additionally, Toshiba's alleged

omission regarding the format war with Blu-ray was a well-publicized situation and its alleged

misrepresentations were puffery.  Count Three of the CCAC is therefore dismissed.

**F.      Count 5:  Breach of Express Warranty**

An express warranty by a seller is created by: "[a]ny affirmation of fact or promise made

by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain," or "[a]ny description of the goods which is made part of the basis of the bargain."

N.J.S.A. § 12A:2-313(1)(a)-(b); Cal. Comm. Code § 2313(1)(a)-(b); Fla. Stat. Ann.

672.313(1)(a)-(b); Idaho Code § 28-2-313(1)(a)-(b); 810 Ill. Comp. Stat. 5/2-313(1)(a)-(b);

Mich. Comp. Laws § 440.2313(1)(a)-(b).  The use of "formal words of promise or that the seller

have a specific intention to warrant the good" is not necessary to create an express warranty.

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 824 (3d Cir. 1999) (citing N.J.

Stat. Ann. § 12A:2-313(2)).  But "an affirmation merely of the value of the goods or a statement

purporting to be merely the seller's opinion or commendation of the goods does not create a

warranty."  N.J. Stat. Ann § 12A:2-313(2); Cal. Comm. Code § 2313(2); Fla. Stat. Ann.

672.313(2); Idaho Code § 28-2-313(2); 810 Ill. Comp. Stat. 5/2-313(2); Mich. Comp. Laws

§ 440.2313(2).

Plaintiffs allege that Toshiba's "affirmations of fact and/or promises relating to the [HD

DVD] Players created express warranties that Toshiba would continue to support the HD DVD

format and continue to manufacture such players."  (CCAC ¶ 117.)  They allege that Toshiba

breached these warranties when it announced in February 2008 that it would exit the HD DVD

market.  (Id. ¶ 118.)  Specifically, Plaintiffs argue that "Toshiba warranted that its [HD DVD]

Players could play HD DVDs 'Today, Tomorrow, and Beyond.'"  (Plts.' Opp'n Br. 17.)  Yet

there is no allegation that the HD DVD Players cannot still play HD DVDs.  Rather, the problem

is that the availability of new HD DVDs has severely decreased.  Plaintiffs further argue that the

long-term viability of the HD DVD market "was a large part of the basis of the bargain between

Toshiba and the putative Class, because consumers were concerned with choosing a high

definition DVD player which would have long term viability."  (Id. 17-18.)  Toshiba's exit from

the HD DVD market has, according to Plaintiffs, "substantially limited that viability."  (Id. 18.)

       Plaintiffs do not allege that their HD DVD Players no longer can play HD DVDs.

Rather, they argue that Toshiba's tag line that its HD DVD Players were for "Today, Tomorrow,

and Beyond" created an express warranty that, essentially, Toshiba would remain in the HD

DVD market forever.  As discussed with respect to the Plaintiffs' consumer fraud claims, the

statement that HD DVD Players were for "Today, Tomorrow, and Beyond" is puffery and not

specific enough to create an express warranty.  Plaintiffs cite to L.S. Heath & Son, Inc. v. AT&T

Information Systems, Inc., 9 F.3d 561, 570 (7th Cir. 1993), where the Court of Appeals for the

Seventh Circuit, applying New Jersey law, noted that, "A statement can amount to a warranty,

even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an

affirmation or representation that the [product] possesse[s] a certain quality or capacity relating

to future performance.'"  Id. (quoting Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.,

416 A.2d 394, 396 (N.J. 1980)).  While it is certainly true that a statement relating to future

performance may create an express warranty, even if not intended by the seller, Toshiba's

statement regarding its HD DVD Players does not rise to that level.  In L.S. Heath & Son, the

court found that AT&T's statement that its "complete intregated [sic] data processing and

voice/data communications network [will] satisf[y] all of your aforementioned objectives," may

have constituted an express warranty.  Id.  AT&T's statement was far more specific than

Toshiba's statement that its HD DVD Players were for "Today, Tomorrow, and Beyond."

Additionally, even if Toshiba created an express warranty of future <u>performance</u>, there is no

allegation that the HD DVD Players do not perform as they are intended — i.e., to play HD

DVDs.

The CCAC fails to state a claim for breach of express warranty.  Count Five of the CCAC

is therefore dismissed.

## G.   Count 6:  Breach of Implied Warranty

A warranty of merchantability is implied by law in every contract for the sale of goods.

N.J.S.A. § 12A:2-314; Cal. Comm. Code § 2314; Fla. Stat. Ann. 672.314; Idaho Code § 28-2-

314; 810 Ill. Comp. Stat. 5/2-314; Mich. Comp. Laws § 440.2314.  For goods to be

merchantable, they must at least:

> (a) pass without objection in the trade under the contract
> description; and
> (b) in the case of fungible goods, are of fair average quality within
> the description; and
> (c) are fit for the ordinary purposes for which such goods are used;
> and
> (d) run, within the variations permitted by the agreement, of even
> kind, quality and quantity within each unit and among all units
> involved; and
> (e) are adequately contained, packaged, and labeled as the
> agreement may require; and
> (f) conform to the promises or affirmations of fact made on the
> container or label if any.

<u>Id.</u>

Plaintiffs allege that Toshiba "provided Plaintiffs with implied warranties that Toshiba

would continue to support the HD DVD format and continue to manufacture such players, and

that such Players were not and would not be obsolete in the immediate future."  (CCAC ¶ 121.)

Plaintiffs allege that Toshiba breached these implied warranties "by announcing that it would no

longer support the HD DVD format or continue manufacturing or marketing such Players, rendering them obsolete almost immediately after their sale." (Id. ¶ 122.) Plaintiffs further allege that they "did not and could not have known" that the HD DVD Players would soon be "obsolete" because of Toshiba's "failure to warn the public, failure to disclose and their issuance of false and misleading statements and concealment." (Id. ¶ 123.)

In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended. See Altrionics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992) (Under Pennsylvania law, to establish a breach of either the implied warranty of merchantability or the warranty of fitness for a particular purpose, "plaintiffs must show that the equipment they purchased from defendant was defective."); Trujillo v. Apple Computer, Inc., 581 F. Supp. 2d 935, 940 (N.D. Ill. 2008) ("'An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control.'") (quoting Lipinski v. Martin J. Kelly Oldsmobile, Inc., 325 Ill. App. 3d 1139, 1150 (Ill. App. Ct. 2001)); Johnson v. Black & Decker (U.S.), Inc., 408 F. Supp. 2d 353, 358 (E.D. Mich. 2005) ("[T]he Michigan Supreme Court [has] explained that 'whether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product' is 'defective,'" where defective means that a product has a manufacturing defect or a design defect. (internal citation omitted)); Pulte Home Corp., Inc. v. Ply Gem Indus., Inc., 804 F. Supp. 1471, 1486 (M.D. Fla. 1992) (Whether alleging strict products liability, implied warranty of merchantability, or negligence, a plaintiff must prove "(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier [or manufacturer] parted possession with the product.") (quoting Cassisi v.

Maytag Co., 396 So. 2d 1140, 1141 (Fla. Dist. Ct. App. 1981)); Meldco, Inc. v. Hollytex Carpet

Mills, Inc., 118 Idaho 265, 269 (Idaho Ct. App. 1990) (breach of the implied warranty of

merchantability may be established by proof that the product was defective or that the "product

was unmerchantable at the time of delivery"); Khan v. Shiley Inc., 217 Cal. App. 3d 848, 857

(Cal. Ct. App. 1990) (plaintiff with an inherently defective heart valve failed to state a claim for

breach of warranty unless the valve malfunctioned); James v. Harry Weinstein, Inc., 685

N.Y.S.2d 471, 472 (N.Y. App. Div. 1999) (plaintiff could not recover damages from

manufacturers pursuant to theories of strict products liability or implied warranty because he

failed to establish that he product was defective when it left the possession of the manufacturers).

Plaintiffs do not allege that their HD DVD Players were defective at the time of purchase

or that they are now defective. Plaintiffs also do not allege that the HD DVD Players are not fit

for the ordinary purpose for which such goods are used — i.e., to play HD DVDs. Plaintiffs

argue that the "implied warranty of merchantability demands that a car must be safe to drive, a

toaster oven must be able to toast bread, and an HD DVD player be able to be used to play HD

DVD discs." (Plts.' Opp'n Br. 19.) This statement about the implied warranty is correct. Yet

Plaintiffs do not allege that the HD DVD Players cannot be used to play HD DVDs. Plaintiffs'

claim for a breach of the implied warranty of merchantability fails under Plaintiffs' own

description of the requirements.

Plaintiffs argue, without citation, that the CCAC "is replete with allegations that Toshiba

HD DVD players are not reasonably suited for their intended purpose." (Plts.' Opp'n Br. 19.)

Yet the court finds nothing in the CCAC to allege that the HD DVD Players are not reasonably

suited for their intended purpose of playing HD DVDs. The court is not required to accept such

legal conclusions unsupported by factual allegations.

The CCAC fails to state a claim for breach of implied warranty.  Count Six of the CCAC

is therefore dismissed.[10]

## H.      Count 4:  Violation of the Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act ("MMWA") permits "a consumer who is damaged

by the failure of a supplier, warrantor, or service contractor to comply with any obligation under

this chapter, or under a written warranty, implied warranty, or service contract, [to] bring suit for

damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  The MMWA defines

"written warranty" as

> (A) any written affirmation of fact or written promise made
> in connection with the sale of a consumer product by a supplier to
> a buyer which relates to the nature of the material or workmanship
> and affirms or promises that such material or workmanship is
> defect free or will meet a specified level of performance over a
> specified period of time, or
> (B) any undertaking in writing in connection with the sale
> by a supplier of a consumer product to refund, repair, replace, or
> take other remedial action with respect to such product in the event
> that such product fails to meet the specifications set forth in the
> undertaking,
> which written affirmation, promise, or undertaking becomes part of
> the basis of the bargain between a supplier and a buyer for
> purposes other than resale of such product.

Id. § 2301(6).  The MMWA defines "implied warranty" as "an implied warranty arising under

State law . . . in connection with the sale by a supplier of a consumer product."  Id. § 2301(7).

Plaintiffs allege that Toshiba, through its breach of its implied and express warranties

"stating that it would continue to support the format and manufacture HD DVD hardware so as

to ensure the continued production of HD DVD software; and that HD DVD offered the best of

---

[10] Toshiba argues that certain Plaintiffs' claims for breach of implied warranty should be
dismissed because the applicable state law for those Plaintiffs requires privity.  (Def.'s Mot. to
Dismiss 11 - 12.)  Because the court finds that the Plaintiffs have failed to state a claim for
breach of implied warranty — whether or not privity is required — it will not address Toshiba's
argument regarding privity.

high-definition television and DVD and was the format for today, tomorrow and beyond"
violated the MMWA.  (CCAC ¶ 115.)

    Because the court finds that the Plaintiffs have failed to state a claim for breach of
implied or express warranties, they have also failed to state a claim for breach of the MMWA.
Further, Plaintiffs do not allege that Toshiba has breached a warranty that "relates to the nature
of the material or workmanship" of the HD DVD Players, so the allegations do not satisfy the
definition of "written warranty" under the MMWA.  Count Four of the CCAC is therefore
dismissed.

### III.  CONCLUSION

    For the reasons set forth above, Toshiba's motion will be granted and the Plaintiffs'
claims will be dismissed without prejudice.  In light of the allegations alleged in the CCAC, as
developed in documents referenced in the CCAC, it would not appear that the CCAC can be
cured by amendment.  Nevertheless, consistent with the practice of the Court of Appeals,
Plaintiffs are given leave to file an amended complaint within 30 days of the date of the order
implementing this opinion.


                                    s/ Dickinson R. Debevoise
                                   DICKINSON R. DEBEVOISE, U.S.S.D.J.



Dated:  September 10, 2009